# Illinois Official Reports

## Appellate Court

---

*People v. Cannon*, 2015 IL App (3d) 130672

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS L. CANNON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0672 |
| Filed | January 7, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful consumption of alcohol by a minor was reversed where the State failed to prove that defendant did not fall within the exemption of the Liquor Control Act providing that the consumption of alcohol by a minor under the direct supervision and approval of the parents or parent or those standing *in loco parentis* of such person in the privacy of a home is not prohibited by the Act. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 12-CM-2573; the Hon. Cory D. Lund and the Hon. Rick Mason, Judges, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Frank P. Andreano and Ted P. Hammel (argued), both of Brumund, Jacobs, Hammel, Davidson & Andreano, LLC, of Joliet, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet, and Laura E. DeMichael (argued), of State's Attorneys Appellate Prosecutor's Office, of Ottawa, for the People. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt concurred in part and dissented in part, with opinion.


**OPINION**

¶ 1     Defendant, Travis Cannon, was charged with unlawful consumption of alcohol by a minor (235 ILCS 5/6-20(e) (West 2012)). Prior to trial, he filed a motion to suppress evidence, arguing that the police violated his fourth amendment rights by entering the back deck of his home without a warrant or consent. The trial court conducted a hearing and denied the motion. Following a bench trial, the court found defendant guilty and sentenced him to 24 months' probation. On appeal, defendant contends that (1) the trial court erred in denying his motion to suppress, and (2) the State did not prove him guilty beyond a reasonable doubt. We reverse.

¶ 2     At the hearing on defendant's motion to suppress evidence, Denise Byrd, a police officer with the Village of Minooka, testified that she was on patrol on August 9, 2012, when she received a dispatch of a noise complaint and possible underage drinking at 107 Rivers Edge Court in Minooka. When she arrived at that address, she heard loud voices that appeared to be coming from the rear of the house. She walked to the back of the house but "couldn't see anything from the ground," so she walked onto the back deck. She observed six or seven people sitting around a table that had numerous beer cans and liquor bottles on it. Byrd said, "Hi. Hello." Defendant responded, "Get off my property. You don't have a warrant to be here." Defendant then told everyone to go inside the house. Byrd remained on the deck while everyone "shuffled inside of the house" through the patio door. Byrd could see defendant's mother, Sandra Cannon, inside the house by the patio door.

¶ 3     Byrd called for backup and walked toward the front of the house. When she got to the yard on the side of the house, she saw defendant running toward her. Defendant said he would speak to her on the front porch. Byrd testified that she could detect the odor of an alcoholic beverage coming from defendant's mouth.

¶ 4     On the front porch, Byrd told defendant she wanted to speak to one of his parents. Defendant initially refused, but Sandra eventually came out of the house and onto the front porch. When Byrd asked Sandra if she was hosting an underage drinking party, she responded, "No, there is nobody drinking in the house."

¶ 5     Sergeant Matthew Chinski of the Minooka police department testified that he responded to Cannon's home at Byrd's request. When he arrived, he went to the front porch of the property, where he encountered defendant. Defendant had slurred speech, bloodshot and glassy eyes, and a strong odor of an alcoholic beverage coming from his facial area, leading Chinski to believe that defendant had consumed one or more alcoholic beverages. Chinski asked defendant his age. Defendant said he was 19 years old. Defendant was being argumentative and attempted to go back inside the house, but Chinski told him he was not free to leave and grabbed his shoulder. Defendant's mother then tried to pull defendant into the house, and Chinski arrested her for obstructing justice. Defendant was arrested for unlawful consumption of alcohol by a minor.

¶ 6        After the above testimony was presented, the State moved for a directed finding, denying defendant's motion to suppress. The trial court granted the State's motion and denied defendant's motion to suppress. Defendant filed a motion to reconsider, which the trial court also denied.

¶ 7        Defendant then filed a motion to dismiss the charges against him, arguing that he was not guilty of underage consumption because he was drinking in his own home under the supervision and approval of his mother. The trial court denied the motion, ruling that there were questions of fact regarding whether defendant was under his mother's supervision while drinking.

¶ 8        Defendant's case proceeded to a bench trial. Byrd testified to the same facts as she did at the hearing on defendant's motion to suppress. She added that she did not see defendant's mother until after defendant "shuffled" everyone from the back deck inside the house. Byrd did not know if Sandra was on the back deck prior to that.

¶ 9        Byrd testified that she asked defendant if he had consumed any alcohol. He replied, "No." Byrd asked to speak to the "owner of the house." Defendant told her that she was in bed. Several minutes later, Sandra came onto the porch. Sandra never said that she allowed defendant to drink alcohol, and Byrd never asked Sandra if defendant had permission to drink alcohol. Byrd admitted that she did not know if Sandra supervised defendant drinking alcohol.

¶ 10        Chinski testified consistently with his testimony at the suppression hearing. He also said that he observed that defendant had "slurred[,] thick-tongued speech, bloodshot glassy eyes, [and a] pretty strong odor of alcoholic beverage coming from him." Based on his training and experience, Chinski concluded that defendant had consumed alcohol.

¶ 11        Officer Robert Stukel, Jr., of the Minooka police department testified that he responded to a call to 107 Rivers Edge Court at approximately 2:13 a.m. on August 9, 2012. When he was at the front of the residence, defendant ran toward him and said something like, "What are you guys doing on my property?" or "Get the fuck off of my property." Stukel could smell an odor of alcohol emanating from defendant's breath.

¶ 12        After all of the evidence was presented, the trial court ruled that the State met its burden of proving defendant guilty beyond a reasonable doubt of unlawful consumption of alcohol by a minor. The court sentenced defendant to 24 months' court supervision.

¶ 13                                    I

¶ 14        Defendant first argues that the trial court erred in denying his motion to suppress evidence. He contends that Officer Byrd violated his fourth amendment rights when she walked onto the back deck of his home without a warrant or consent.

¶ 15        The fourth amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." U.S. Const., amend. IV. Likewise, under our state constitution, "[t]he people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches[ and] seizures." Ill. Const. 1970, art. I, § 6.

¶ 16        Law enforcement officers may lawfully approach the front door of a residence to conduct an investigation. *People v. Redman*, 386 Ill. App. 3d 409, 418 (2008). They can proceed to a

back door after they have knocked on the front door and received no answer but they have reason to believe someone is home. See *People v. Woodrome*, 2013 IL App (4th) 130142, ¶ 24; *Hardesty v. Hamburg Township*, 461 F.3d 646, 654 (6th Cir. 2007). Officers may approach the back door of a residence where circumstances indicate that the officers might find the homeowner there. *Alvarez v. Montgomery County*, 147 F.3d 354, 356 (4th Cir. 1998); see also *People v. Redman*, 386 Ill. App. 3d 409, 418 (2008) (an officer may approach the back of a residence "where a legitimate reason is shown for approaching the back door").

¶ 17    Here, Byrd testified that she initially proceeded to the back of defendant's house because she heard noise coming from there. She proceeded up the back deck, attempting to find and speak to the owner of the house. Since noise was coming from the back deck, it was reasonable for Byrd to believe that she might find the homeowner there and talk to him or her about the noise complaint she was investigating. Based on these circumstances, Byrd did not violate defendant's fourth amendment rights. See *Alvarez*, 147 F.3d at 356; *Redman*, 386 Ill. App. 3d at 418. The trial court properly denied defendant's motion to suppress.

¶ 18                                                    II

¶ 19    Defendant next argues that the trial court erred in finding him guilty of unlawful consumption of alcohol by a minor because the State failed to prove that his mother was not supervising him when he drank alcohol in his home.

¶ 20    The Liquor Control Act of 1934 (Act) provides that "[t]he consumption of alcoholic liquor by any person under 21 years of age is forbidden." 235 ILCS 5/6-20(e) (West 2012). However, the Act further provides that "the consumption [of alcoholic liquor] by a person under 21 years of age under the direct supervision and approval of the parents or parent or those persons standing in loco parentis of such person under 21 years of age in the privacy of a home, is not prohibited by this Act." 235 ILCS 5/6-20(g) (West 2012).

¶ 21    Section 6-20(g) is an exemption to the Act. *People v. Finkenbinder*, 2011 IL App (2d) 100901, ¶ 10. When a criminal statute contains an exemption and the legislature intends the burden of proving the exemption to be on the defendant, the legislature specifically sets forth that intent in a provision of the statute. *People v. Perkins*, 225 Ill. App. 3d 405, 408 (1992) (citing section 24-2(h) of the deadly weapons statute (Ill. Rev. Stat. 1989, ch. 38, ¶ 24-2(h) (now 720 ILCS 5/24-2 (West 2012))); section 506 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, ¶ 1506) (now 720 ILCS 570/506 (West 2012))); and section 16 of the Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56½, ¶ 716 (now 720 ILCS 550/16 (West 2012)))). Where a criminal statute contains an exemption and the legislature has not set forth a provision within the statute allocating the burden of persuasion as to the exemption, we presume that the burden is on the State, not the defendant. *Id*. The Act does not contain a provision indicating who has the burden of proving the exemption set forth in section 6-20(g). See 235 ILCS 5/6-1 *et seq*. (West 2012). As such, the burden of proving that the exemption does not apply should be on the State. See *Perkins*, 225 Ill. App. 3d at 408.[1]

---

[1]The dissent cites *People v. Smith*, 71 Ill. 2d 95 (1978), for the proposition that defendant bears the burden of proving the exemption. However, the deadly weapons statute at issue in *Smith* stands in stark contrast to the Act. The deadly weapons statute states: "The defendant shall have the burden of proving *** an exemption." 720 ILCS 5/24-2(h) (West 2012). The Act contains no provision placing the burden of proving its exemption on the defendant. Thus, *Smith* is not controlling.

¶ 22 The exemption requires that a parent supervise the minor's actual consumption of alcohol, not all of the minor's activities while the alcohol is still in his system. *People v. Haase*, 2012 IL App (2d) 110220, ¶ 15. The term "supervise" means " 'to coordinate, direct, and inspect continuously and at first hand the accomplishment of' " an act. *Finkenbinder*, 2011 IL App (2d) 100901, ¶ 12 (quoting Webster's Third New International Dictionary 2296 (1993)). It is not enough for a parent to approve of the defendant's consumption of alcohol and merely be present in the same house while the defendant is consuming the alcohol. *Id.* ¶ 13. The parent must be "conducting a continuous and first-hand coordination, direction, [and] inspection of defendant's alcohol consumption" so that she is aware of how much defendant drank, the type of alcohol defendant drank, and where defendant is at all times when drinking. *Id.*

¶ 23 Here, the State established that defendant was drinking alcohol in his home while his mother was present. Although defendant initially told Byrd that his mother could not come to the door because she was in bed, the evidence does not support that statement. Officer Byrd testified that she saw Sandra awake and inside the house just minutes earlier when all of the individuals from the deck shuffled into the house. A few minutes later, Sandra came to the front door. No one testified that she looked like she has just gotten out of bed.

¶ 24 It was the State's burden to establish that defendant was not directly supervised by his mother while he was drinking alcohol. Officer Byrd testified that she did not know if Sandra was on the back deck or inside the house supervising defendant while he drank alcohol. No one testified that they saw defendant drinking outside the presence and supervision of his mother. Under the facts of this case, the State failed to meet its burden of proving that defendant did not fall within the exemption of the Act. The trial court erred in finding defendant guilty beyond a reasonable doubt of unlawful consumption of alcohol by a minor.

¶ 25                                                 III

¶ 26 The judgment of the circuit court of Will County is reversed.

¶ 27 Reversed.

¶ 28 JUSTICE SCHMIDT, concurring in part and dissenting in part.

¶ 29 I agree with the majority's finding that the officer did not violate defendant's fourth amendment rights when she approached the back porch of the house. This is where my agreement begins and ends. I would find that defendant had the burden of proving that he was entitled to the exemption.

¶ 30 The State bears the burden of proving each element of the crime beyond a reasonable doubt. However, at issue here is whether an exemption applied, not whether the State proved every element of the crime. The majority equates the exemption to an affirmative defense by finding that the State has the burden of proving that the exemption does not apply. *Supra* ¶ 21. I disagree. Affirmative defenses require that the State disprove the affirmative defense beyond a reasonable doubt once the defendant presents sufficient evidence to raise such defense. *People v. Washington*, 326 Ill. App. 3d 1089, 1093 (2002) (citing *People v. Smith*, 237 Ill. App. 3d 901, 907 (1992)).

¶ 31 Contrary to the majority's position, our supreme court has held that exemptions are distinct from affirmative defenses under our statutory scheme. *People v. Smith*, 71 Ill. 2d 95, 105 (1978). Where the legislature intends a provision to qualify as an affirmative defense, it has labeled it as such. *Id.* at 106; *People v. Jones*, 75 Ill. App. 3d 214, 227 (1979). Furthermore, the court held that exemptions have never been an issue for the State to prove. *Smith*, 71 Ill. 2d at 105. In fact, "the State need *never* negate *any* exemption." (Emphases added.) *Id.* at 105-06. Requiring the State to disprove an exemption "would place impossible burdens upon effective prosecution." *Id.* at 105. Furthermore, if the State need disprove an exemption, then someone needs to explain to me how an exemption differs from an affirmative defense. If the majority is correct, an exemption is no different than an affirmative defense. The legislature avoided this problem by requiring the State to prove every element of the offense beyond a reasonable doubt, while requiring defendant to prove his entitlement to the exemption. *Id.* Moreover, our supreme court held that placing the burden on defendant to prove that he is exempt does not violate fundamental principles of justice or due process. *Id.* at 107.

¶ 32 Here, section 6-20(g) is an exemption to the Act, which forbids the consumption of alcohol by a minor. 235 ILCS 5/6-20(g) (West 2012); *People v. Finkenbinder*, 2011 IL App (2d) 100901, ¶ 10. The State was not required to negate that exemption. Evidence established that defendant was a minor and consumed alcohol. Defendant failed to present evidence to establish that he was entitled to the exemption. Therefore, the court did not err in finding defendant guilty of unlawful consumption of alcohol by a minor.

¶ 33 Assuming, *arguendo*, that the State had the burden of proving that the exemption did not apply, I would find that defendant did not provide sufficient evidence to even raise the exemption. The statute and case law make it clear that the exemption requires *direct supervision* by a parent; mere presence in the same house is not enough. *People v. Haase*, 2012 IL App (2d) 110220; *People v. Finkenbinder*, 2011 IL App (2d) 100901; 235 ILCS 5/6-20(g) (West 2012). In *Finkenbinder*, the defendant's parents hosted a party; defendant's mother allowed him "to consume alcohol." *Finkenbinder*, 2011 IL App (2d) 100901, ¶ 3. "During the party, defendant and his mother were not in the same room at all times ***." *Id.* Police officers later stopped defendant while he was walking in the middle of a street. *Id.* ¶ 4. Defendant admitted to consuming shots of alcohol and three beers. *Id.* Defendant's mother did not know that he had left the house or that defendant had consumed shots of alcohol. *Id.* ¶ 5. The court found that the mother's mere presence at the party did not amount to "supervision–much less the direct supervision" of the defendant's consumption of alcohol. *Id.* ¶ 13.

¶ 34 Here, defendant did not present evidence establishing that his mother approved of or directly supervised his consumption of alcohol. The evidence merely established that defendant's mother was in the house while defendant consumed alcohol either inside and/or outside on the back porch. Therefore, even if the State had to prove that the exemption did not apply, I would find that defendant did not present sufficient evidence to raise the exemption. The mother's mere presence in the home during this party was insufficient to raise the issue of defendant's entitlement to the exemption.

¶ 35 For the foregoing reasons, I respectfully dissent.